UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-61333-CIV-DIMITROULEAS/SNOW

GWENDOLYN WARE,

      Plaintiff,

v.

SHOWGIRLS, INC. CABARET and
LEONARD DEL PERCIO,

      Defendants.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
STATEMENT OF FACTS**

Plaintiff, GWENDOLYN WARE, by and through her undersigned counsel, hereby files her Responses to Defendants' Statement of Facts [D.E. 31] in accordance with Local Rule 56.1(b).

**RESPONSE**

1. Plaintiff does not dispute the facts contained in Paragraph 1.

2. Plaintiff does not dispute the facts contained in Paragraph 2.

3. Plaintiff disputes the fact contained in Paragraph 3 to the extent that the fact needs the following clarification: Plaintiff spoke to Ben Smith and Larry Dennis a couple of days prior to hire. Dep. Ware at 9–10. She then called back the following day, and was advised that she was hired and to start work on that Friday. Dep. Ware at 10.

1

4.  Plaintiff disputes the fact contained in Paragraph No. 4. Plaintiff did not testify that Larry Dennis and Ben Smith decided to hire her. *See* Dep. Ware at 9–10.

5.  Plaintiff does not dispute the facts contained in Paragraph 5.

6.  Plaintiff does not dispute the facts contained in Paragraph 6.

7.  Plaintiff disputes the following facts contained in Paragraph 7: "Late in 2011, near the end of Plaintiff's tenure at Showgirls…(Dep. Percio at 3, 5)." Leonard Del Percio (hereinafter, "Del Percio"), did not testify as to when in 2011 he purchased 90% of the stock of Showgirls, nor did he state that it was "near the end of Plaintiff's tenure at Showgirls". Dep. Percio at 5. Plaintiff does not dispute the remaining facts contained in Paragraph 7.

8.  Plaintiff does not dispute the facts contained in Paragraph 8.

9.  Plaintiff disputes the facts contained in Paragraph 9. Del Percio did not testify that he was at Showgirls to "learn, not to direct" as stated. *See generally* Dep. Percio.

10. Plaintiff does not dispute the facts contained in Paragraph 10.

11. Plaintiff does not dispute the facts contained in Paragraph 11.

12. Plaintiff does not dispute the facts contained in Paragraph 12.

13. Plaintiff does not dispute the facts contained in Paragraph 13.

14. Plaintiff does not dispute the facts contained in Paragraph 14.

15. Plaintiff does not dispute the facts contained in Paragraph 15.

16. Plaintiff does not dispute the facts contained in Paragraph 16.

17. Plaintiff does not dispute the facts contained in Paragraph 17.

18. Plaintiff does not dispute the facts contained in Paragraph 18.

19. Plaintiff does not dispute the facts contained in Paragraph 19.

2

20. Plaintiff disputes the fact contained in Paragraph 20 as this fact is not cited and is not supported by any evidence in this case.

21. Plaintiff does not dispute the facts contained in Paragraph 21.

22. Plaintiff does not dispute the facts contained as stated in Paragraph 22. However, Plaintiff also testified she normally worked 5-6 days per week. Dep. Ware at 26. Further, Nestor frequently did not show up and Efran was transferred to the other location because he was having transportation issues and on those occasions Plaintiff would work a double shift. Dep. Ware at 29.

23. Plaintiff does not dispute the facts contained as stated in Paragraph 23. However, that was frequently not what actually occurred as Plaintiff worked additional days and or double shifts if people failed to show up for their shifts. Nestor also worked days at times but consistently was absent on a weekly basis. Dep. Ware at 29. Efran only worked nights and had transportation issues and Plaintiff frequently covered his shifts as well. Id.

24. Plaintiff does not dispute the facts contained as stated in Paragraph 24. However, Nestor was routinely absent approximately twice a week. Dep. Ware at 29.

25. Plaintiff does not dispute the facts contained as stated in Paragraph 25. However, Efran, who only worked nights, had transportation issues and was ultimately transferred to the other location leaving only Plaintiff and Nestor to cover both the day and evening shifts. Dep. Ware at 29.

26. Plaintiff disputes the facts contained in Paragraph 26 to the extent that this fact assumes that Showgirls had a "cook-on-call" during the entire time Plaintiff was employed by Defendants. Plaintiff testified that there was a person hired as a

"cook-on-call" on the specified page, but that the third guy was not brought in until September or October 2011. Dep. Ware at 31.

27. Plaintiff disputes the facts contained in Paragraph 27 to the extent that this fact assumes that the barback cooked in the kitchen from 10PM to 2AM during the entire time Plaintiff was employed by Defendants. Plaintiff testified that the barback cooked "fried food" from 10PM to 2AM when the "hours changed". Dep. Ware at 32-33. Plaintiff did not testify as to when the hours changed, however. *See id.*

28. Plaintiff disputes the following fact contained in Paragraph 28: "...Plaintiff testified that it took a couple of hours to hand wash 30-35 dishes...(Dep. Ware 34-35)." Plaintiff testified that the amount of time spent washing dishes "depended" on the amount of plates present. Dep. Ware at 33. Plaintiff does not dispute the remaining facts contained in Paragraph 28. Some of the kitchen cleanup was off-the-clock at the direction of her supervisors. Aff. Ware ¶13.

29. Plaintiff does not dispute the facts contained in Paragraph 29.

30. Plaintiff does not dispute the facts contained in Paragraph 30.

31. Plaintiff disputes the facts contained in Paragraph 31. Before Plaintiff was placed on the payroll, Plaintiff would write her hours down on a calendar. Dep. Ware at 54. However, Plaintiff also testified that she complained about her shortages on hours worked to her boss on a weekly basis and continued to work even though she knew she was not being properly compensated because she needed the job. Dep. Ware at 55, 56. Plaintiff further testified that she was getting her regular pay, but not her overtime pay. Dep. Ware at 56. Finally, while she did clock in and

4

clock out for her regular shifts, Plaintiff was also instructed not to clock back in for most of the evening shifts. Aff. Ware ¶12.

32. Plaintiff does not dispute the facts contained in Paragraph 32.

33. Plaintiff does not dispute the facts contained in Paragraph 33.

34. Plaintiff does not dispute the facts contained in Paragraph 34.

35. Plaintiff does not dispute the facts contained in Paragraph 35.

36. Plaintiff does not dispute the facts contained in Paragraph 36.

37. Plaintiff does not dispute the facts contained in Paragraph 37.

38. Plaintiff does not dispute the facts contained in Paragraph 38. However, this is not a relevant fact because Plaintiff's Statement of Claim is from February 2011 through November 2011. Plaintiff's first week of employment was in 2010.

39. Plaintiff does not dispute the facts contained in Paragraph 39. However, this is not a relevant fact because Plaintiff's Statement of Claim is from February 2011 through November 2011. Plaintiff's second week of employment was in 2010.

Plaintiff also incorporates the following paragraphs as her statement of undisputed facts:

## PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

40. Gwendolyn Ware (hereinafter, "Plaintiff") was hired as a day-time cook. Dep. Ware at 10; Dep. Leonard at 18.

41. During the period that Plaintiff was employed, Defendants scheduled one cook per shift. Dep. Smith at 12.

42. The kitchen opened for lunch at 11AM every day. Dep. Ware at 41–43. However, Plaintiff was expected to arrive around 10:30AM in order to start serving lunch by 11AM. Dep. Ware at 43.

43. Lunch was served until about 7PM every day. Dep. Ware at 43–44.

44. Although her typical shift ended at 7PM, Plaintiff would not leave the kitchen until the kitchen was cleaned for the night cook. Dep. Ware at 41–42. Cleaning usually took another two hours. *Id.*; Aff. Ware[1] ¶13.

45. During the time Plaintiff worked at Showgirls, the club was open until 1AM Sunday through Thursday until 2PM on Friday and Saturday. Dep. Leonard[2] at 18.

46. Brandon (LNU) was the day shift manager while Plaintiff was employed with Defendants. Dep. Ware at 19. Ben Smith was a manager as well who primarily worked the night shift. Dep. Smith[3] at 7. Larry Leonard was also a manager and would work the day and/or night shift in a given week. Dep. Leonard at 8; Dep. Ware at 19.

47. Plaintiff was scheduled to begin at 10:30AM and scheduled to leave at around 7PM. Dep. Ware at 43, 44.

48. Though her shift was supposed to end at 7PM, Plaintiff would not leave the club until about 9PM because she had to clean the kitchen for the night shift cook. Dep. Ware at

---

[1] "Aff. Ware" hereinafter refers to the Affidavit of Gwendolyn Ware, attached hereto as Exhibit 1.
[2] "Dep. Leonard" hereinafter refers to the transcript of the deposition of Larry Leonard, taken on May 20, 2013 in this matter. This transcript is attached hereto as Exhibit 2.
[3] "Dep. Smith" hereinafter refers to the transcript of the deposition of Ben Smith, taken on May 20, 2013 in this matter. This transcript is attached hereto as Exhibit 3.

49. Plaintiff would mop, wash dishes, and make sure everything was in order for the following day. *Id.*

50. Plaintiff was scheduled to work about five days per week with two days off per week. Dep. Ware at 14, 22.

51. However, Plaintiff would actually work seven days a week the majority of the time she was employed with Defendants though she was normally scheduled for five. Dep. Ware at 25.

52. Defendants employed about three cooks during the same time period as Plaintiff: Nestor, Plaintiff, and another cook, possibly named Efran. Dep. Leonard at 18–19; Dep. Smith at 11; Dep. Ware at 21; Aff. Ware ¶5.

53. Typically, Plaintiff was scheduled as the day shift cook and Nestor and/or Efran was scheduled as the night shift cook. Dep. Leonard at 20; Dep. Ware at 25, 26. One cook was scheduled per shift. Dep. Smith at 12; Dep. Ware at 21, 22; Aff. Ware ¶6.

54. At some point during Plaintiff's employment with Defendants, Efran was transferred to Defendants' location in Miami. Dep. Ware at 29. When this happened, the only cooks employed at the location where Plaintiff worked were Plaintiff and Nestor. *Id.*; Aff. Ware ¶9.

55. However, Nestor did not show up to work about twice weekly on average. *Id.*; Aff. Ware ¶8.

56. Though Plaintiff was scheduled as the day shift cook, Plaintiff would work the night shift if the night shift cook called out. Dep. Ware at 24; Aff. Ware ¶¶7, 8, 9.

57. There were occasions where Plaintiff worked both the day and the night shift in one day. Dep. Leonard at 21; Aff. Ware ¶9. There were fourteen (14) shifts per week. Aff. Ware ¶10. When Efran was employed at Plaintiff's location, Plaintiff worked between six (6) and nine (9) shifts per week. *Id.* After Efran left, Plaintiff worked between seven (7) and ten (10) shifts per week since there were only two cooks. *Id.*

58. When Plaintiff worked both the day and night shift in one work day, Plaintiff was told to clock in and out for the day shift, but not to clock in or out for the night shift. Aff. Ware ¶12.

59. During March 2011, Plaintiff worked 21 days in a row resulting in her being hospitalized. Rog. ¶18; Aff. Ware ¶11.

60. The kitchen was always open. Dep. Ware at 31–32. At night, the kitchen stayed open until about two or three in the morning, depending on the day. Id. at 32, Aff. Ware ¶14.

61. At one point, likely during the summer of 2011, the club implemented a "late night" menu. Dep. Smith at 13–14; 21–22. Under this menu, a barback would cook the food ordered after 10PM during the weekdays. *Id.* at 13. However, during the weekends, the kitchen served a full menu. *Id.*

62. Though the kitchen was not serving a full menu during this period on the weekdays, Plaintiff, if she was working at night, would still have to remain in the kitchen to clean and close down the kitchen. Dep. Ware at 33. This usually took a couple of hours. *Id.*

63. In addition to working as a cook for Defendants, Plaintiff also did the laundry for the club for about three or four months when the club had a lapse in their laundry service. Dep. Ware at 56, 57; Dep. Leonard at 28; Aff. Ware ¶15. Both Leonard and Smith were aware that Plaintiff was doing the laundry during this time. Dep. Leonard at 27, 28; Dep. Smith at 20.

64. Plaintiff would take home tablecloths, napkins, and towels and wash and dry these linens at home. *Id.*; Aff. Ware ¶15.

65. It took her approximately four hours to complete about eight loads of linens. *Id.* at 56–57; Aff. Ware ¶15.

66. Plaintiff washed the linens weekly during this period. *Id.* at 57.

67. In addition to washing the linens, Plaintiff also folded the linens at work the following day. *Id.* at 58. Sometimes, someone else would assist with the folding, but usually Plaintiff folded the linens herself. Dep. Ware at 58; Aff. Ware ¶16.

68. Plaintiff was compensated approximately $40 in cash each time she washed the linen. Dep. Ware at 57–58. However, because Plaintiff used a coin-operated washer and dryer, it would cost Plaintiff between $13 and $20 to wash the linens, depending on the amount of loads. *Id.* at 58; Aff. Ware ¶15.

69. Neither Ben Smith nor Larry Leonard knew how long it took Plaintiff to wash, dry, and fold the linens every week. Dep. Smith at 21; Dep. Leonard at 29.

70. Defendants do not have records of the cash Plaintiff received while she was employed with Defendants. Dep. Leonard at 31.

71. Plaintiff complained several times to Larry Leonard when her check was short. Dep. Ware at 54–55. When she complained, however, Leonard instructed her "not to worry about it." Dep. Ware at 55; Aff. Ware ¶17.

72. Plaintiff continued to work for Defendants despite not receiving all the monies due her because she "needed the job." Dep. Ware at 55–56; Aff. Ware ¶18.

Dated: August 1, 2013.

Respectfully submitted,

LAW OFFICES OF CHARLES EISS, P.L.
Attorneys for Plaintiff
8211 W. Broward Blvd., Suite 360
Plantation, Florida 33324
(954) 812-9513 (Cell)
(954) 990-6923 (Office)
(855) 423-5298 (Facsimile)

By:     /s/ Charles Eiss
        CHARLES M. EISS, Esq.
        Fla. Bar #612073
        Icelaw21@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of August, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Charles Eiss
Charles M. Eiss, Esq.

11

<u>SERVICE LIST</u>

*GWENDOLYN WARE. V. SHOWGIRLS, INC. ET. AL.*
*CASE NO.:* 12-61333-CIV-DIMITROULEAS/SNOW
United States District Court
Southern District of Florida

Charles Eiss, Esq.
Law Offices of Charles Eiss, P.L.
8211 W. Broward Blvd., Suite 360
Plantation, FL 33324
(954) 812-9513 (Telephone)
(954) 473-4907 (Facsimile)
Email: Icelaw21@aol.com
Counsel for Plaintiff

*Method of Service*: Notice of Electronic Filing

Lowell Kuvin, Esq.
Law Office of Lowell J. Kuvin, P.A.
17 E. Flagler Street
Suite 223
Miami, FL 33131
(305) 358-6800 (Telephone)
(305) 358-6808 (Facsimile)
Email: lowell@kuvinlaw.com
Counsel for Defendants

*Method of Service*: Notice of Electronic Filing

Sherril Colombo, Esq.
Wison Elser, et. al., LLP
3800 Bank of America Tower
100 Southeast Second Street
Miami, Florida 33131
(305) 374-4400 (Telephone)
sherril.colombo@wilsonelser.com
Counsel for Defendant Del Percio

*Method of Service*: Notice of Electronic Filing